## TUCKFIELD v. CRAGER.

### No. 1615 (82 Pac. 860).

1. APPEAL—REVIEW—CONFLICTING EVIDENCE.—Where the evidence is is conflicting and there is substantial evidence to support the finding of the trial court, such findings cannot be disturbed.

2. INJUNCTION—DECREE—CONFORMITY TO PLEADINGS.—In an action for damages for trespass and to enjoin defendant from continuing the trespass, the complaint specifically described the land by metes and bounds, and further alleged ownership of a certain fence on the north line of the premises. It then alleged that defendant had taken down part of the fence and continually trespassed on the premises by using the same as a driveway. The evidence showed that the fence was two feet north of the northern line of the land described in the complaint, and that defendant had constructed the south wall of his building so that a portion of it extended over a part of the two foot strip, and parallel with the driveway. Held, that notwithstanding there was evidence tending to show that the fence had been for twenty-five years considered the boundary line

by plaintiff and defendant's grantors the judgment enjoining defendant from maintaining the wall was not authorized by the complaint and was outside of the issues.

STRAUP, J., dissenting in part.

(Decided October 24, 1905.)

APPEAL from District Court, Salt Lake County; S. W. Stewart, Judge.

Action by Elizabeth M. Tuckfield, administratrix of the estate of Charles B. Tuckfield, deceased, against Samuel E. Crager. From a judgment for plaintiff, defendant appeals.

REVERSED.

*J. R. Bowdle* and *Zane & Stringfellow* for appellant.

*A. V. Taylor* and *E. A. Walton* for respondent.

APPELLANT'S POINTS.

This is an action in trespass and for the plaintiff to maintain it she must have been in the possession of the premises upon which the trespass was committed at the time of its commission. "In order to maintain trespass *quare clausum fregit* there must have been an actual possession by the plaintiff at the time when the trespass was committed, either by himself or his authorized representative." (28 Am. and Eng. Ency. Law [2 Ed.], page 573; *Newcomb v. Love et al.,* 70 N. W. 443; *Kenney et al. v. Ferguson,* 59 N. W. 401; *Ruggles v. Sands,* 40 Mich. 559; *Uttendorffer v. Saegers,* 50 Calif. 496.)

The phrase, "dedicated to the use of the public," is defined in sec. 2066, Compiled Laws of Utah 1888: "All roads, streets, alleys and bridges laid out or erected by others than the public, and dedicated or abandoned to the use of the public, are highways. A highway shall be deemed and taken as dedicated and abandoned to the use of the public when it has been continuously and uninterruptedly used as a public thoroughfare for a period of ten years." This was in force at the time Tuckfield took down the sign, quit paying taxes on, and abandoned the premises to the use of the public. In the Revised Statutes of Utah of 1898 this section is divided into

sections 1114 and 1115, the later section is as follows: "A highway shall be deemed to have been dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years."

A man may dedicate his land to the use of the public to be used as a street, with or without writing by fencing it out to be used as such, or by acquiescence in such use, or by expressing his assent to such use or his intention to dedicate may be inferred from his acquiescence in its continued use as a road, or street, or an alley. (*Wilson v. Hull*, 7 Utah 90; 9 Am. and Eng. Ency. of Law [2 Ed.], p. 34; *Morgan v. Railroad Co.*, 96 U. S. 716-723; *City of Cincinnati v. White's Lessee*, 6 Peters 440; 2 Greenleaf on Evidence, sec. 662; Elliott, Roads and Streets, pp. 91-92-98 and 99; Jones on Easements, sec. 424; *Schettler et al. v. Lynch et al.*, 23 Utah 305.)

The court under the pleadings was called upon to decide whether a trespass had been committed on certain described premises, and it goes outside of those premises and finds that the plaintiff, by adverse possession, held the title to other premises, that the adverse possession was because a certain fence had been an undisputed boundary between properties for over thirty years, and found that trespass had been committed upon that property in a way entirely different from that laid in the complaint, and enjoined the defendant from maintaining a building thereon.

If there ever was a case in which the court found issues not made by the pleadings, this is that case. That the findings and judgment must conform to and be within the issues made by the pleadings is an elementary principle of law and is well established by many authorities, a few of which we cite below. 11 Ency. Pl. and Pr., p. 872, states the rule as follows: "This rule is of universal application, and whether the action or suit be at law, in equity, or under the code, the judgment must be *secundum allegata et probata.*"

"Judgment based upon issues not made by the pleadings are *coram non judice* and void and may be set aside or disregarded even in a collateral proceeding."

·(11 Ency. Pl. and Pr. 878; *Burnett v. Stearns,* 33 Cal. 837; *Gregory v. Nelson,* 41 Cal. 244.)

"The plaintiff cannot declare on one theory and recover on another." (*Peay v. Salt Lake City;* 11 Utah 331; *Idaho F. Co. v. Insurance Co.,* 8 Utah 41; *Poynter v. Chapman,* 8 Utah 442; *Turner v. Utah Title, etc.,* 10 Utah 61; *Vance v. Whalen,* 7 Utah 44; *Bachman v. Sepulveda,* 39 Calif. 688; *Northern R. Co. et al. v. Jordan et al.,* 87 Calif. 23; 11 Ency. Pl. and Pr., 868; *Kennedy & Shaw Lumber Co. et al. v. Priet et al.,* 115 Cal. 98; *Sowles et al. v. Clawson,* 76 Pac. 1067.)

## RESPONDENT'S POINTS.

Appellant says that the plaintiff was not in the possession of the property, and therefore cannot maintain her action. He cites the Encyclopedia, second edition, volume 28, page 573, to the effect briefly, that in order to maintain trespass there must have been an *actual* possession by the plaintiff at the time when the trespass was committed. He omits to quote from the same section these words, "or failing that a constructive possession in respect to that right being actually vested in him."

The three Michigan cases cited by him do not hold that a constructive possession is not sufficient, and are not in point at all, for the reason that Michigan is a common law State, and distinguishes very closely and nicely between trespass and case. Which distinction is unknown to our Code of Civil Procedure. The case in 50 Cal. did not involve the question of constructive possession at all. In that case the court held that the defendant could properly show that a third person was in actual possession as tenants, and as affecting the measure of plaintiff's damages.

Actual possession is not necessary to maintain an action of trespass where the party has the title to the soil. The title drawing to the possession. (*Cairo, etc., Ry. Co. v. Woolsey,* 85 Ill. 370; *Warren v. Cochran,* 30 N. H. 379.)

One having the legal title to a strip of land over which another claims a right of way has constructive possession and

maintains trespass against the other for wrongful entry, tearing down fences, etc. (*Hurt v. Adams*, 86 Mo. App. 73.)

The defendant claims that this rod of ground became a highway under sec. 2066, Compiled Laws of 1888, and sec. 1115, Revised Statutes of 1898. It is a sufficient answer to this to say that the evidence wholly fails to show that this rod of ground has been continuously and uninterruptedly used as a public thoroughfare for the statutory period. The evidence shows that whatever travel over this rod of ground there was, or whatever use was made of it by any person other than the owners, was in connection with the rest of the Tuckfield property, and that its use was the use which is ordinarily made of a private way. A private way cannot be transformed into a public way by user. (*City of Indianapolis v. Kingsbury*, 101 Ind. 201.)

"Where there is nothing more than a mere license there is no dedication; where the use is merely permissive, with authority in the owner in the servient estate to put an end to the use of his pleasure, there is no dedication. Nor in such a case are there such acts as will enable the courts to infer an intent to dedicate." (Elliott on Roads and Streets [1 Ed.], 96.) Dedication is never to be presumed without evidence of unequivocal intention on the part of the owner.

(*Quinn v. Anderson*, 70 Cal. 454.) A mere permissive use does not ripen into a right. (*Harkness v. Woodmansee*, 70 Utah 227.)

Counsel say: "Each city lot is 165 feet wide." Who says it is? Mr. Paul says so, and he says so because Mr. Doremus assumed, contrary to the fact, that it was so, and drew a map upon such assumption and filed it in his office. It needs no argument nor authority we take it to convince this court that titles cannot be divested nor acquired by any such nonsensical proceedings. Where the boundaries of a tract of land are, are questions of fact for the jury. (1 Thompson on Trials, 1461. *White v. Spreckles*, 75 Cal. 610.)

Where parties acquiesce in a certain line as the boundary for twenty years neither can thereafter claim beyond such line. (*Strickley v. Hill*, 22 Utah 257; *Larsen v. Onesite*, 21

Utah 38; *McMaster v. Morse,* 18 Utah 21; *Burris v. Fitch,* 76 Cal. 395.)

A judgment must show what part of plaintiff's close was trespassed upon or the judgment will not be a bar in a subsequent suit. (*Howard v. Allen,* 100 Mass. 236; *Dunkel v. Wiles,* 11 N. Y. 420.) To say that findings must conform to the pleadings is not to imply that they must be identical therewith in language. In the case at bar the complaint is general: For trespass on certain land. The findings show specific trespass on particular part of the land, in every respect, therefore, within the issues.

## STATEMENT OF FACTS.

Plaintiff, as the administratrix of the estate of Charles B. Tuckfield, deceased, brought this action to recover damages for trespass alleged to have been committed by defendant on certain premises belonging to said estate, and for an order perpetually restraining and enjoining defendant from continuing such trespass. The allegations of the complaint upon which plaintiff relies for a recovery of damages and injunctive relief are as follows: "That the estate of said Charles B. Tuckfield, and the plaintiff as the administratrix thereof, at all times herein mentioned, was the owner of the certain premises in Sale Lake County, Utah, described as follows, to-wit: Beginning at a point three rods north of the southwest corner of lot 4, in block 35, plat A. Salt Lake City survey; thence north one rod; thence east twelve rods; thence south one rod; thence west twelve rods, to place of beginning, and a certain fence on the northern line of said premises. That on or about the — day of May, 1901, the defendant forcibly broke and entered upon said land, the same being in the possession of the plaintiff, and took down a large part of said fence, and also then and there disturbed the plaintiff in the use and occupation of said land, and prevented her from enjoying the same as she otherwise would have done. That the defendant has since said last-named date continually trespassed upon and over said premises, and all against the repeated protests of plaintiff, and has continual-

ly and almost daily driven horses and wagons and other vehicles over said land and used the same as a driveway and means of entrance upon and into certain other premises occupied by defendant"—to plaintiff's damage in the sum of $200. The defendant in his answer admitted using the land described in the complaint as a driveway; but alleged that during the twenty years prior to the commencement of the action the strip of land mentioned was a public thoroughfare, and "had been by the owners thereof dedicated and abandoned to the use of the public as and for a public highway for more than ten years prior to the commencement of the action." The strip of land in question is situated between Fifth and Sixth South streets and extends from State street east to the center of block 35, and for more than ten years prior to the commencement of the action had been used as an alleyway. In December, 1900, defendant purchased a strip of ground fronting on State street two and one-half rods in width and twelve rods in length, joining and paralleling the plaintiff's premises on the north, and constructed thereon a brick building, the south wall of which extends 1.8 feet south of the line of an old fence which was erected on or near the boundary line between plaintiff's and defendant's premises. The court, among other things, found that the strip of land in question (describing it by metes and bounds, as alleged in the complaint) belonged to said estate, and that no part of the same had been dedicated as a public highway, and "that the premises extended to, and the plaintiffs were the owners thereof, a line coincident with the line of a certain fence which formed the northern boundary line of said premises," and that the south wall of a brick foundry owned by defendant is over and upon plaintiff's said premises a distance of 1.8 feet. Judgment was entered awarding plaintiff $24 damages, and defendant was perpetually enjoined from trespassing on said premises and from maintaining the said south wall of his said foundry upon the 1.8 feet of ground referred to. Defendant appeals.

McCARTY, J., after making the foregoing statement of case, delivered the opinion of the court.

Appellant's first contention is that the court erred in finding that the alleyway in question had not been dedicated to the public as a highway. It is sufficient here to state, without reviewing the evidence, that there is a sharp conflict in the evidence on this point, and, as there is substantial evidence in the record which tends to support the finding of the trial court on the question of dedication and abandonment, such finding cannot be disturbed.

It is further contended that the court erred in finding that the south wall of defendant's building extends 1.8 feet over the south boundary line of his premises and onto the strip of land described in plaintiff's complaint, and that the court erred in entering judgment enjoining defendant from maintaining the south wall of his building on the 1.8 feet of ground referred to. By an examination of the pleadings it will be observed that plaintiff alleges in her complaint that she is the owner of a strip of ground one rod in width by twelve rods in length, specifically describing the same by metes and bounds, and that she is also the owner of a certain fence therein described and then she proceeds to point out and allege the specific acts of trespass on the part of defendant upon which she relies for recovery: First, the taking down of the fence by defendant; and, second, his continually driving over the land with horses, wagons, and other vehicles and using it as a driveway. No reference whatever is made in the pleadings to the wall in question. Plaintiff called R. S. Tilden, who is a civil engineer, as a witness, and he testified that he surveyed and platted the premises described in the complaint. The plat was admitted in evidence, and shows, and Tilden so testified, that the survey from which it was made was run "according to old existing land lines as found on the ground." According to Tilden's testimony and the plat referred to, no part of defendant's wall is on the rod of ground described in the complaint, but that there are six inches more ground south of the wall than plaintiff claims in her complaint. True, evidence was introduced which tended to show that an old partition fence, the one which defendant is charged in the complaint with having taken down, was

constructed about twenty-five years ago on what was then supposed to be the true boundary line between plaintiff's and defendant's premises. Plaintiff testified that she "had never heard any objections made to that fence being the dividing line between the two properties." Other witnesses testified that they had always recognized and understood that the fence was the dividing line and marked the boundary line between these properties. The line of fence is two feet north of the northern line of the strip of ground described and claimed by plaintiff in her complaint. Neither during the trial, nor at any other time, did plaintiff amend or offer to amend her complaint so as to include therein this strip of ground 1.8 feet in width which the court gave her and upon which the wall referred to is constructed.

Appellant contends that, as there is no allegation in the complaint wherein it is claimed that the line of the partition fence mentioned is the northern boundary of the premises therein described, and no reference having been made in the pleadings to the wall, the findings of the court on these questions are outside of the issues made by the pleadings. We are of the opinion that this objection to the findings and judgment is well founded. As stated by counsel for appellant in their brief: "The piece of ground [referring to the 1.8 feet] is not contained in or referred to in the pleadings, no trespass is alleged to have been committed upon it, no question of title, possession or ownership was raised concerning it." The record shows that soon after defendant purchased the property which is contiguous to and adjoining plaintiff's premises on the north, he procured the services of a competent civil engineer who surveyed and platted the ground, and he immediately thereafter commenced the construction of a brick building of which the wall in question forms a part. After the survey was made, and before he commenced work on the building, defendant went to plaintiff and informed her of what he had done in the premises. He said, quoting his own testimony, which, is not denied: "I told her I had a survey made and expected to build there, and I wanted to be right and didn't want to put my building

in the wrong place, and that, if she was not satisfied with the survey, to get a surveyor . . . and have him run it off and, if my man was wrong I would pay the entire expenses, it shouldn't cost her a cent, but I wanted to be sure I was right." Plaintiff made no objection to the survey, neither did she make any protest or objection to the construction of the wall on the ground where it now stands. Under these circumstances the defendant might well have honestly believed that his right to maintain the wall of his building where it stands would never be questioned. And, even though it be conceded that plaintiff and her predecessors in interest acquired title to this narrow strip of ground upon which the wall stands by adverse possession, it does not necessarily follow that under a proper pleading she would be entitled under the circumstances of this case to have her title quieted and the defendant pull down and remove the wall.

Jones, in his treatise on the Law of Real Property and Conveyancing (volume 1, sec. 373), says:

> "Even in case there has been a mistake as to the boundary line and one owner has placed a building a little over the line upon land of an adjoining owner, a court of equity will not order the removal of the building, but will leave the party to his remedy at law. The court may, however, enter a decree that, if the plaintiff will release the strip of land so built upon within a certain time, judgment shall be entered for the value of the land as found by a referee and costs. The court will not aid the plaintiff in obtaining an exorbitant price for land which is comparatively valueless except for litigation."

As plaintiff made no claim to the 1.8 feet of ground in her complaint, nor in any way challenged defendant's right to maintain his wall thereon, he was not called upon, nor did he have any opportunity, to plead the equitable defenses men-

29 Utah—31

tioned by Mr. Jones, if any existed in his favor. While these
questions are not raised by the pleadings, yet the court, by
going out side of the issues to determine the title to the 1.8
feet of ground referred to, has adjudicated them so far as
they may have any bearing on defendant's right to maintain
his wall on this piece of ground, and they are here referred
to for the purpose of inviting attention to the injustice which
might be done in this as well as in other cases of like charac-
ter, should any arise, if we should affirm the judgment and
thereby establish a practice permitting a court to find on is-
sues not raised by the pleadings. Besides, the rule is elemen-
tary that the findings and judgment must conform to, and
be within, the issues made by the pleadings. In 11 Enc. Pl.
and Pr., 868, the rule is stated as follows:

> "A court cannot properly put upon its record a
> judgment which is not a proper sequence of the
> pleadings. It is a general rule that the judgment
> must conform to, and be supported by, the plead-
> ings in the case. A recovery must be had, if at all,
> upon the facts alleged, and facts proved but not
> pleaded will not support the judgment."

In the case of *Sowles et al. v. Clawson,* 76 Pac. 1067, this
court, in an opinion written by Chief Justice Bartch, held
that:

> "A party cannot declare on one thing and recov-
> er on another. That in every action the plaintiff
> must, in his complaint, give the defendant fair no-
> tice of what he claims, is the elementary rule of
> pleading; and, if at the trial he finds a deviation
> in his evidence from his allegations in the com-
> plaint, he should amend, if the variance is not such
> as to preclude an amendment so that when the jud-
> ment is announced it will be *secundum allegata et
> probata.* Among the reasons for this certainty of
> pleading is so that the judgment, when rendered,
> will be a bar to any subsequent suit for the same
> claim."

In this case plaintiff alleges ownership of a strip of ground one rod in width by twelve rods in length. The description of the land is set out in the deed under which she shows title with the same particularity as it is alleged in the complaint. When land is thus particularly and technically described, such description must control. (5 Cyc. 878; Jones, Real Prop. & Conv. sec. 410; *Haggin v. Lorenz,* 15 Mont. 309, 39 Pac. 285.) There is absolutely no conflict in the evidence as to the exact location of the land described in the complaint. According to the evidence introduced by plaintiff, consisting of the deed under which she claims title and a survey and plat made by R. S. Tilden, and the testimony of Tilden himself, conclusively shows that the northern line of said land is south of defendant's wall. While a party to an action or proceedings involving the title to real estate may recover a less amount than that demanded by the allegations of his pleading, the rule is well settled that he cannot recover more than he demands. (15 Cyc. 180; *Reay v. Butler* [Cal.], 7 Pac. 669.) Counsel for respondent recognize this rule, for they say in their brief: "We do not claim that the court would have any right in any way to adjudicate, either the title to any land not described in the complaint, nor to make an adjudication that any trespass of any kind or character had been committed upon any other land." This is not a case wherein there is a dispute or a conflict in the evidence as to the exact location of the boundaries of the property described in the pleadings. As hereinbefore stated, the evidence shows conclusively that the whole of the strip of land in issue is south of plaintiff's wall. The court, however, goes outside of the issues and finds that the plaintiff is the owner of other land not mentioned in the pleadings, and found that a trespass had been committed upon that property in a way entirely different from that alleged in the complaint, and enjoins the defendant from maintaining his building thereon. Therefore the findings and judgment, so far as they refer to the 1.8 feet of ground upon which defendant's wall is standing, are erroneous.

The case is remanded, with directions to the trial court to

modify the findings and judgment by eliminating therefrom that part wherein it is found that the plaintiff is the owner of the 1.8 feet of ground and wherein the defendant is enjoined from maintaining his wall thereon. In other particulars the judgment is affirmed. It is ordered that each party pay his own costs on this appeal.

BARTCH, C. J., concurs.

STRAUP, J., (dissenting).

To that portion of the opinion affirming the judgment I concur; to that portion modifying the judgment I dissent. I think that 1.8 feet of ground was part and parcel of the land described in the complaint and was fairly within the issues. The suit involved the ownership and possession of a certain rod of ground. One of the material questions in the case was the location of the north boundary line of said rod, the line marking the boundary between the lands of the respective parties. The respondent always contended that that line was established by a certain fence, which for thirty years was acquiesced in and treated as the actual boundary line. She testified that the fence was the north boundary line of the rod mentioned and described in the complaint. The appellant contended that the boundary of his land was where the survey showed it to be, 1.8 feet south of the fence. Much evidence was given on behalf of respondent showing that the fence was established, maintained, acquiesced in, and treated in manner and for the time as claimed by her. Evidence was also given by surveyors showing that the line, according to surveys, was 1.8 feet south of the fence. On these matters the court found as follows: "That the premises [described in the complaint] extended to, and the plaintiffs were the owners thereof, a line coincident with the line of a certain fence which formed the northern boundary line of said premises, and which has existed at the said place for more than thirty years last past, and which is still standing for a length of about 86 feet on the eastern part of said northerly lot line, and the said plaintiff as such executrix was the own-

er of said fence and the premises on which it was situated
during all the times herein mentioned. That said fence was
on a line 1.8 feet north of the south line of the brick foundry
owned by the defendant and which is located and situated,
except as to the south one foot and eight inches (1.8 feet)
thereof, upon the premises immediately north, the premises
described in the complaint herein. That the said fence and
line of said fence has been an acknowledged and undisputed
boundary between the premises described in the complaint
and the premises immediately adjoining on the north for more
than thirty years last past, and the plaintiff and her prede-
cessors in interest have been in open, notorious, adverse, and
undisputed possession of the premises immediately south of
said line, under a claim of right, for more than thirty years
last past. That on a day in May, 1901, the defendant forci-
bly broke and entered upon the said land and took down and
destroyed a large part of said fence, to-wit, 109.5 feet of the
westerly part thereof, and proceeded to erect a certain build-
ing, the south wall of which extended and projected 1.8 feet
over and upon said premises of plaintiff for a length of 109.5
feet, and still maintains the same." I do not at all dispute
the propositions of law as stated by the majority court that
the judgment must conform to and be supported by the plead-
ings; that a party cannot declare on one thing and recover on
another; that a party cannot allege a trespass upon one par-
cel of land and recover for a trespass upon another and dif-
ferent parcel; that under circumstances where, through a
mistake as to the boundary line, a building has been projected
a little over the line, or upon principles of an equitable es-
toppel, when involved and existing, a court of equity will not
order the removal of the building. But these principles have
here no application. A certain parcel of land was described
in the complaint. Respondent alleged she was the owner and
entitled to the possession thereof, and that the defendant tres-
passed thereon. The defendant answered by a general denial
and alleged a dedication to the public. These were the issues
as framed by the pleadings. At the trial, among other con-
tested questions, was the one of boundary which was sharply

contested by both parties. The court found the north boundary line of the premises described in the complaint to be the fence line as contended for by the respondent. The appellant contended that the boundary line should be 1.8 feet south thereof. Hence the inquiry involved, and the findings were, not as to different parcels, but as to the disputed boundary line of the parcel alleged in the complaint. When the majority court say the fence line is two feet north of the line of the parcel described in the complaint, that is upon the theory of the surveys, not upon the theory of the fence line. The court having found that the fence line was acquiesced in and treated as the actual boundary line for thirty years, and there being ample evidence to support such finding (indeed, upon that there is no substantial conflict), the law is well settled that such is the true line and neither party can claim beyond it, no matter what the surveys show. (*Strickly v. Hill*, 22 Utah 257, 62 Pac. 893, 83 Am. St. Rep. 786, and cases there cited.)

It is claimed the respondent should have specifically alleged in her complaint the projection of the wall. The respondent alleged ownership and possession of the land, that the defendant forcibly broke and entered upon it, took down the fence, disturbed her in the use and occupation of said land, and prevented her from enjoying the same. These allegations, of course, are very general. But if they were deemed so uncertain and indefinite that it could not reasonably be ascertained what the appellant was called upon to meet, he should have, by proper pleading, called on the action of the court to require the respondent to make her allegations more specific and certain. This he did not at all do, but proceeded to trial, and both he and respondent litigated the boundary line, and as to whether the wall of appellant's building was upon his ground or upon that of the respondent. The testimony of the respective parties, I think, shows that the situation of appellant's building was entered upon and drawn in question. Appellant said: "When this matter came up and I wanted to build on there, I went to see Mrs. Tuckfield. After I had a survey made I went to see Mrs. Tuck-

field to see what she had to say about it. She was administrator of the estate, and I had a conversation with her in regard to it, and in that conversation I told her that I had the survey made and expected to build there, and I wanted to be right and I didn't want to put my building in the wrong place, and that if she wasn't satisfied with the survey to get a surveyor herself and have him run it off, and if my man was wrong I would pay the entire expenses. She said she would see about it. Q. Well, did she do anything toward having that survey made? A. Not to my knowledge. Q. Did she ever call upon you about it? A. Never; I never had a representative call upon me." Respondent said: "Mr. Crager tore down a little more than half of that fence. He tore down about five rods without my permission. I objected to it being torn down. . . . I had a conversation with Mr. Crager about the time he bought the property. He came to see me. He had pulled the fence down and came to see if he was right, if he could do it. He told me he had the property surveyed. At the time of the conversation I was administratrix of my husband's estate." Upon cross-examination she said: "Q. And Mr. Crager, you allege in your complaint here, has been trespassing on that since some time in May, 1901? A. Yes, sir. Q. That is the time you understand that he built his shop, isn't it, Mrs. Tuckfield? A. Between 1900 and 1901, yes, sir. Q. And this conversation you had with him just about the time he began to build it, wasn't it, as you understand? A. Yes, sir; before he started to build, I believe. Q. And in that conversation he told you that he had had a survey made and wanted you to have a survey made, if you found any objection to it, didn't he? A. No, sir. I didn't see anything of a survey." There is also other evidence with reference to the situation of the building with the respect to its projecting over the fence line and as to whether it is upon respondent's or appellant's land. It will thus be seen that this 1.8 feet of ground was not a parcel of land separate and different from that described in the complaint, but it was part and parcel of the rod mentioned and described in the complaint, and, as such, was litigated by the parties. Indeed, I

think the effect of the prevailing opinion is a holding that the respondent was properly adjudged the owner of the 1.8 feet of ground, but that she was not entitled in this action to any redress on account of the maintenance of a portion of the building thereon, because such fact was not specifically alleged in the complaint as an act of trespass. But when the parties, in effect, treated such act as being within the general allegations of trespass, as I think they did, the reason for denying respondent redress therefor, because not specifically alleged, becomes untenable.

Reference has also been made to the fact that appellant may have constructed his building over the true line through mistake. The position of the fence was obvious, and that it was marking the boundary line between the parties was apparent. That the fence stood there for thirty years and during all this time was claimed and treated by respondent's intestate and by his predecessors in interest and by the predecessors of appellant, as the actual boundary, and, as such, was acquiesced in by them, is not even disputed by appellant. Nor is it at all claimed by him that he was ignorant of such fact, but the record shows, until he got ready to build, he did not act disputing such boundary line or at all claiming it was otherwise than the fence line. The conduct of appellant is not that he, through mistake, placed his building south of the fence line; but, to the contrary, his conduct asserts that he did not propose to be bound by the fence line and therefore tore it down and wholly ignored it, and insisted on constructing, and did construct, his building over and beyond it, then claiming the boundary line where the surveys showed it to be regardless as to the fence. Something is also said that the respondent, the administratrix of the estate, made no objection to the survey and did not protest to the construction of the building, from which it is inferred an estoppel may be claimed. Upon this I think the evidence fairly conflicted. But I do not understand the law to be that an administrator by declarations or conduct, upon principles of an equitable estoppel, may thereby forfeit title to land of his intestate or transfer its use and enjoyment to another. I understand the law to be quite emphatic that he may not do so.