## HAMER v. HOWELL.

No. 1693.   Decided September 24, 1906 (86 Pac. 1073).

1. ELECTIONS—CONTEST—SUFFICIENCY OF EVIDENCE—PROMISE OF OF-FICE.   Evidence in an election contest *held* sufficient to sustain a finding that contestee did not promise to appoint persons to offices.

2. EVIDENCE—JUDGMENT MUST CONFORM TO PLEADINGS.   In contested election cases the evidence must be confined to the issues raised by the pleadings, and the judgment also must conform therewith the same as in other civil cases.

3. SAME—SUFFICIENCY OF PETITION.   Under Revised Statutes 1898, section 917, subd. 4, providing that the petition in an election con-test shall set out the particular grounds of contest, and section 919 providing that no statement of a ground of contest will be rejected which is set out "with such certainty as will advise the defendant of the particular proceeding or cause for which such election is con-tested," the allegation of the petition that the other candidate re-ceived a greater number of legal votes cast than were received or cast for contestee, which is but a conclusion, is insufficient to au-thorize consideration of the illegality of ballots because of the kind of paper on which they were printed, matters printed or written thereon, or the way in which they were marked.[1]

APPEAL from District Court, Weber County; C. W. Morse, Judge.

Action by Daniel Hamer against James Albert Howell to contest an election.   From an adverse judgment, contestant appeals.

AFFIRMED.

*O. W. Powers, C. S. Varian, C. C. Richards,* and *H. H. Henderson* for appellant.

*E. T. Hulaniski, W. L. Maginnis, J. W. Kimball* and *Heywood & McCormick* for respondent.

---

[1] Sowles v. Clawson, 28 Utah 74, 76 Pac. 1067; Tuckfield v. Crager, 29 Utah 472, 82 Pac. 860.

APPELLANT'S POINTS.

A candidate for an office to which is attached a fixed salary, who offers to the electors to discharge, if elected, the duties of of such office at less than the stated salary, is not entitled to have counted for him any votes given in consideration of such promise. (*State v. Purdy,* 36 Wis. 213; *Slate v. Collier,* 72 Mo. 13; *Carrothers v. Russel,* 53 Iowa 350, 5 N. W. 499; *Nichols v. Mudgett,* 32 Vt. 546; *Cook v. Shipman,* 24 Ill. 614; *Tucker v. Aiken,* 7 N. H. 113; *State v. Olin,* 23 Wis. 309.)

When a man makes a promise of patronage to secure his election, it is pretty well understood that the consideration is that the promisee will not only vote himself for the promisor, but induce as many of his friends as possible to do the same. (McCreary on Elections [4th Ed.], 163; *Bradley v. Clark,* 133 Cal. 196, 65 Pac. 395; *State v. Towns,* 153 Mo. 99, 54 S. W. 552; *State v. Church,* 5 Ore. 375, 20 Am. Rep. 746; *Carroll v. Green,* 148 Ind. 362, 47 N. E. 223.)

The court may not arbitrarily disregard the testimony of credible witnesses where, as in this case, there can be but one inference drawn by reasonable men from the testimony given by them. (*Thompson v. Hynds,* 15 Utah 389; *Bank v. Donald* [Minn.], 58 N. W. 269; *Engmann v. Est. of Immel* [Wis.], 18 N. W. 182; *Boe v. Lynch* [Mont.], 49 Pac. 381; 11 Am. & Eng. Enc. Law, 500; 3 Enc. of Evidence, 753-755.)

"Omission of mandatory requirements is fatal, whether from fraud, mistake or irregularity. Such statutes are regarded as constitutional and valid, though by their application the rejection of a few honestly voted ballots is necessitated." (*Kirkpatrick v. Board of Can.* [W. Va.], 44 S. E. 465; *West v. Ross,* 53 Mo. 350; *Ledbetter v. Hall,* 62 Mo. 422; *State v. Connor* [Tex.], 23 S. W. 1103; *State v. Connor* [Tex.] 25 S. W. 815; *Lay v. Parsons* [Cal.], 38 Pac. 447; *Currin v. Clayton* [Me.], 29 Atl. 930; *Keller v. Toulme* [Miss.], 7 So. 508, 15 Cyc. 357.

The· allegation "that at the said election one ————— received the greatest number of legal votes for the said office" was sufficient. (High on ·Extraordinary Legal Remedies, sec. 710; *Attorney General v. Barstow,* 4 Wis. 568; *Howard v. Shields,* 16 O. St. 189 ;. *Rounds v. Smart,* 71 Me. 382; *Kilburne v. Patterson* [N. C.], 3 S. E. 491, 17 Enc. Pl. & Pr., 464, 466, 467.)

STATEMENT OF FACTS.

At the general election held on the 8th day of November, 1904, Henry H. Rolapp. and· James A. Howell were, respectively, the Democratic and Republican nominees for the office of judge of the Second judicial district of the state of Utah, comprising the counties of Weber, Morgan, and Davis. The official count showed that 6,763 votes were cast for Howell and 6,596 for Rolapp, which gave the former a majority of 167. Howell was, therefore, declared elected, and a certificate was duly issued to him by the Secretary of State, and, on the 1st Monday of January, 1905, he duly qualified and entered upon the duties of the office. On December 21, 1904, Daniel Hamer commenced this action in the district court of Weber county to contest the election of Howell, and obtain a judgment annulling his election and adjudging that Rolapp had received the highest number of legal votes cast in said district, and that he, therefore, was and is entitled to the office. This proceeding is brought under section 914, Rev. St. 1898, which provides:

"The election of any person to any public office, the location or relocation of a county seat, or any proposition submitted to a vote of the people, may be contested: (1) For malconduct, fraud, or corruption on the part of the judges of election at any polling place, or of any board of canvassers, or any member of either board sufficient to change, the result. (2) When the incumbent was not eligible to the office at the time of the election. (3) When the incumbent has given or offered to any elector or any judge or canvasser of the election, any bribe or reward in money, property, or anything of value, for the purpose of procuring his election, or has committed any other offense against the elective ·franchise defined by law. (4) When illegal votes have been re-

ceived, or legal votes have been rejected at the polls sufficient to change
the result. (5) For any error of any board of canvassers or of the
judges of election in counting the votes or declaring the result of the
election, if the error would change the result. (6) For any other cause
which shows that another person was legally elected. The term incumbent in this section means the person whom the canvassers declare
elected."

Section 918, Rev. St. 1898, provides:

"When the reception of illegal votes or the rejection of legal votes
is alleged as a cause of contest, it is sufficient to state generally, that
in one or more specified districts or polls illegal votes were given to the
person whose election is contested, which, if taken from him, would reduce the number of his legal votes below the number of legal votes given
to some other person for the same office; or that legal votes for another
person were rejected, which, if counted, would raise the number of legal
votes for such person above the number of legal votes cast for the person
whose election is contested; but no testimony can be received of any such
votes, unless the party contesting such election deliver to the opposite
party, at least three days before such trial, a written list of the number
thereof, and by whom given or offered, which he intends to prove on such
trial; and no testimony can be received of any of such votes except
such as are specified in such list."

The grounds of contest, as alleged in the complaint, are in
substance as follows: "(1) That the said Henry H. Rolapp
received for office a greater number of legal votes cast than
were at said election cast for or received by any other person
for the said office. (2)' That at said election illegal votes
were received by the judges of election in the following-
named election districts [naming them], and that said votes
were wrongfully received and cast and were counted for
James A. Howell [but the number of such illegal votes cast
and counted is not alleged]. (3) That the board of can-
vassers, in canvassing the returns of a certain election district
called 'Hooper City No. 1,' which said returns were in all re-
spects regular and complete upon their face, wrongfully add-
ed 57 votes to such returns for said Howell [thus changing
the result to such extent]. (4) That the said Howell has
given and offered to give to divers and sundry electors and
registered voters within said district [naming nineteen per-
sons] and divers other persons and electors unknown large
sums of money and other things of value for the purpose
thereby of procuring their said votes for him at his election.

(5) That the said Howell offered and promised to give and to procure for one Burdick, an elector, the office of employment as official stenographer in said district court, and that such offer and promise was made and given for the purpose of inducing the said Burdick and other electors to vote for said Howell. It is also alleged that he, Howell, made similar offers and promises to Hooper, Dye, and Dalton. (6) That the officers and judges of election accepted 387 legal votes which were in truth and in fact cast for said Rolapp, but said election judges failed to count and tally said votes for said Rolapp. (7) That the election judges erroneously and wrongfully counted and tallied 387 legal votes for Howell which were cast for Rolapp. (8) That if the said 387 legal votes cast for Rolapp had been counted for him the result would have been so changed as to have caused Rolapp's election. (9) That the said Howell, prior to the election, offered and promised to buy from sundry electors [naming nine persons] and divers other persons and electors unknown frosted and unmarketable and damaged wheat then held and owned by such electors and to pay them therefor the regular market price of good and marketable wheat, and that, in pursuance thereof, the said electors accepted the said offer and delivered frosted, unmarketable and damaged wheat at the store of Reese Howell & Sons, of which the contestee was a member, and received therefor the price of good and marketable wheat." It appears from the record that in some of the polling or voting districts in Weber county outside of Ogden City, many Republicans, residents of those districts, were very much dissatisfied because the county outside of Ogden City was practically without representation on the Republican ticket. George Halverson, who was a candidate for the office of district attorney, and on the same ticket with Howell, was called as a witness by contestant and testified that he and Howell agree to, and did, conduct their campaign together; that they jointly employed workers who were supposed to work for the success of the Republican Party in general, and to make special efforts to secure the election of Howell and Halverson; that a short time before the election

he and Howell met John Hooper and his father on the street and were informed by them "that the representatives of the party outside of Ogden had decided to ask for two deputies in the county courthouse," and that he and one Dye had been agreed upon for the positions; that Howell said, "I will guaranty to take care of one, either Hooper or Dye. I will appoint you assistant stenographer." That witness said, "Judge, you can't do it." On cross-examination the witness stated: "In the conversation with Judge Howell in Ogden when the Hoopers were present . . . the complaint was made that the county had not received anything outside of the city; they thought they should have two deputies in the county court courthouse. I agreed with them. . . . Thereupon Judge Howell said he would take care of one of them. I mentioned the fact that he could not appoint an assistant official stenographer, and that he was making promises which he couldn't fulfill, and I told him he couldn't do it; told Hooper at the same time and told his father."

John D. Hooper was a witness for contestant and testified in part as follows, with respect to the conversation just mentioned: "I began to press the claim for a county office of a deputyship. Judge Howell said that he thought the county was entitled to recognition in that way, that they had not been dealt squarely with, that they were entitled to it. . . . I believe Mr. Dye's name was mentioned. . . . He [Howell] said there had been a conversation prior to that time between himself and Mr. Dye. . . . He said it was no good for me to speak to him until after there was an understanding between them. . . . He hadn't spoken to Mr. Dye anyway definite, or had gotten no definite reply. . . . He asked me also if I was a stenographer. When I told him no, he said he could do nothing for me. He simply said that he felt like he would like to help some of the county boys. If he could do something in that line he would; that is, in the line of place in his private office, but that would have to be an after consideration." Howell, contestee, was called as a witness by contestant, and testified in relation to the conversation with the Hoopers as follows: "At the time the Hoopers met me I didn't say to young Hooper, 'I will guaranty

to take care of one of you,' meaning young Hooper
and Mr. Dye, 'I will appoint one assistant steno-
grapher.' I didn't say that in substance." In support of the
allegation in the complaint that Howell had promised Bur-
dick to appoint him official stenographer the witness Halver-
son testified as follows: "Howell told me on one occasion
that he had promised to appoint Burdick official stenog-
rapher. I didn't attach the interpretation to the conversation
that Judge Howell was going to buy Burdick's vote with that
office." Howell, contestee, testified that he had no recollec-
tion of any such conversation with Halverson. "Previous to
that time [referring to the alleged conversation with Halver-
son] I had not told Burdick that I would make him stenog-
rapher. . . . I don't think I talked with Halverson
about it, not until after the election." Burdick himself, a
witness for contestant, testified on this subject as follows: "I
aspired to the office of stenographer. I had not been promised
it." In relation to the alleged promise made by Howell to
appoint Dye assistant stenographer, Dye testified as follows:
"The judge stated to me that . . . if I would work for
his election that he would promise to give me a position as as-
sistant stenographer of his court. . . . I applied for no of-
fice. . . . Am not a stenographer." The court found the
issues in favor of Howell, contestee, and entered judgment
confirming his election. To reverse this judgment contestant
has appealed.

McCARTY, J., after stating the facts, delivered the opin-
ion of the court.

It is urged that the trial court erred in finding against con-
testant on the charges made that respondent promised Bur-
dick that he would appoint him official stenographer and
promised to appoint Hooper assistant stenographer. Not only
is there a substantial conflict in the evidence on this point,
but we are of the opinion that the finding made on this issue
is supported by a clear preponderance of the evidence. It is
contended, however, that while there may be a conflict in the
evidence respecting the alleged promises made Burdick and

Hooper, Dye's testimony respecting the promise Howell made
to him stands uncontradicted, and that, therefore, the court
should have found on this issue in favor of contestant, and
that the court erred in failing to so find. The record shows
that Dye was one of the active workers and campaigners for
the Republican Party in Weber county, and, at the request of
Halverson, the county chairman sent him out to make cam-
paign speeches. According to Dye's own testimony he made
campaign speeches, and worked for the Republican ticket,
both before and after the time he claims Howell promised to
appoint him assistant stenographer. In view of this, and the
fact that there was no such an office in existence in this state
as assistant stenographer, and the further fact that Dye was
not a stenographer, and in no sense qualified to perform the
duties required of a stenographer, it was for the trial court to
determine the probability or improbability of Howell having
made such a promise, a promise which he must have known
would be impossible for him under any circumstances to ful-
fill and make good. Furthermore, the trial court had an op-
portunity to observe the appearance and demeanor of the wit-
ness while testifying, and was therefore better able than we
are to determine the weight, of his testimony. In fact there
were some matters elicited on his cross-examination which
tended to show that he had taken more than ordinary interest
in the case, and that his sympathies were very pronounced in
favor of the contestant. In view of all these facts and cir-
cumstances, we are not prepared to say that the trial court er-
red in finding this issue in favor of the contestee. There are
numerous other allegations in the complaint charging bribery
and attempted bribery by Howell and those who, it is claim-
ed, acted for him. There is not only a substantial conflict in
the evidence relating to these charges, but the evidence offered
by contestant in support of them is much weaker and more un-
satisfactory than that which we have reviewed and consider-
ed. We therefore, deem it unnecessary to further review or
discuss this branch of the case. Section 918, Rev. St. 1898,
which is set out in the foregoing statement of facts, provides
that when the contest is based on the ground that illegal votes

were received and counted for contestee, which, if rejected, would change the result, and that

"No testimony can be received of any such votes unless the party contesting such election deliver to the opposite party at least three days before such trial a written list of the number thereof, and by whom given . . . which he intends to prove on such trial; and no testimony shall be received of any such votes except such as are specified in such list."

In compliance with this section of the statute contestant served upon contestee, and filed in the case, a list of the names of about forty persons who, it is alleged, cast illegal votes. Contestant, in effect, abandoned this ground of contest, as the evidence introduced was confined to a few only of the persons mentioned in the list. The sixth and seventh grounds of contest were also in effect abandoned, as no evidence was introduced in support of them. This disposes of the questions raised by the pleadings in the case.

Appellant insists that the court erred in its rulings on questions that were presented during the trial, but which, the record shows, were entirely outside of the issues raised by the pleadings. Contestant challenged many of the ballots on the following grounds: (1) That the ballots cast in Morgan and Davis counties were not secret nor constitutional ballots because printed on a quality of paper through which the printed matter and the markings of the voters could be discerned upon the back thereof. (2) That upon the Socialist Party emblem on all the votes cast in Davis county were printed in violation of law, the words, "Workers of the World, Unite." (3) That in one precinct in Morgan county the names of the Republican candidates for justice of the peace and constable were not printed on the Republican ticket, but were written thereon in blank spaces left for the purpose before the ballots were handed to the voters. (4) That many of the electors in the various polling precincts in the district, in preparing their ballots, failed to make a cross under the party emblem, but made crosses opposite the names of the candidates voted for and scratched the names of some of the corresponding candidates on the other tickets,

and that, thereby, the ballots so marked and voted could be identified, and that such markings and scratches constituted distinguishing marks. (5) That many of the ballots voted bore distinguishing marks consisting of ink blotches. These challenges were all denied and the ballots counted. The ruling of the court in denying the challenges is now assigned as error. The complaint in this case contains no allegation that any ballot or ballots were printed on an inferior quality of paper, so that the markings of the voters could be seen and understood upon the back thereof; neither does it contain an allegation that matter other than that allowed by statute was printed or written on any of the ballots, nor that any of the ballots cast contained distinguishing marks by being defaced, mutilated, or blotched, or because of the way in which they were marked by the voters. Section 919, Rev. St. 1898, provides:

"No statement of the grounds of contest will be rejected, nor the proceedings dismissed by any court for want of form, if the grounds of contest are alleged with such certainty as will advise the defendant of the particular proceeding or cause for which such election is contested."

As we have stated, there is no allegation in the complaint respecting any of the matters included within or covered by the challenges. In fact it is entirely barren of any fact or statement which in any way tends to advise defendant that contestant intended to question the validity of the ballots objected to on any one or more of the particular grounds upon which the challenges were based. While the weight of authority holds that statutes governing contested elections should be liberally construed in order that justice may be done, we do not understand that this rule of liberal construction may be extended so as to overturn the well-established rule of practice that the evidence must be confined to the issues raised by the pleadings, and that the judgment rendered must conform thereto. And our attention has been called to no case which holds that in proceedings of this kind, or, for that matter, in any other class of civil actions, questions may be tried and determined which are entirely outside of the issues. In the case

of *Boardman v. Griffin,* 52 Ind. 101, in the course of the opinion, the court says:

"The parties must recover upon the allegations of the pleadings. They must recover *secundum allegata et probata* or not at all. It must be so from the nature of things, so long as our mode of administering justice prevails. It would be folly to require the plaintiff to state his cause of action and the. defendant to disclose his grounds of defense, if, on the trial, either or both might abandon such grounds and recover upon others which are substantially different from those alleged."

This case is cited with approval in *Borders v. Williams,* 155 Ind. 36, 57 N. E. 527, where it is said:

"We perceive no ground for the contention that in contested election cases the procedure is more liberal than on the trial of other civil causes with respect to the issues and evidence. The statute requires the contestor to specifically state in his complaint the grounds of contest relied upon." (*Sowles v. Clawson,* 28 Utah 74, 76 Pac. 1067; *Tuckfield v. Crager,* 29 Utah 472, 82 Pac. 860; 11 Enc. Pl. & Pr., 863; *Bailey v. Hurst,* 113 Ky. 699, 68, S. W. 867; *Lehlbach v. Haynes,* 54 N. J. Law 77, 23 Atl. 422; *Gillespie v. Dion,* 18 Mont. 183, 44 Pac. 954, 33 L. R. A. 703; *Edwards v. Logan* (Ky.), 69 S. W. 800; *Whitney v. Blackburn* (Or.), 21 Pac. 874, 11 Am. St. Rep. 857.)

Counsel for appellant contend that the matters embraced in the challenges referred to come within and are covered by the first alleged ground of contest set forth in the complaint and designated as "ground No. 1," and which is set out in full in the foregoing statement of facts. By an examination of that paragraph of the complaint, it will be seen that it alleges. a conclusion only, and contains no statement of fact. Now the same general rule of civil pleading which requires the plaintiff to set forth in his complaint the facts upon which he bases his right for relief governs in this class of cases. In fact subdivision 4, section 917, Rev. St. 1898, provides that the contestant shall set out in his petition "the particular grounds of contest," and section 919 in effect provides that this shall be done, "with such certainty as will advise the 'defendant of the particular proceeding or cause for which such election is contested." In 15 Cyc. 405, this same rule is announced as follows:

"In statutory proceedings to contest an election the contestant's initial pleading, whether it be termed a declaration, complaint, petition, or notice and statement, must set forth the particular facts relied upon as invalidating the election of his opponent in order that the latter may be apprised of the case he has to meet. Thus an allegation that the contestant received more votes than the contestee is an averment of a conclusion, . . . and when pleaded as an independent ground of contest will be regarded as surplusage. . . . General averments of fraud, mistake, intimidation and the like, are but conclusions of law. The particular facts relied on must be set forth." (*Smith v. Harris*, 18 Colo. 274, 32 Pac. 616; *Menten v. Shuttee* [Okla.], 67 Pac. 478; *Soper v. County Commissioners, etc.* [Minn.], 48 N. W. 1112; *Lehlbach v. Haynes*, supra.)

Because of a lack of sufficient and proper allegations in the complaint the contestant was not in a position to base a contest on any of the grounds specified in the challenges and was not entitled o have litigated nor determined any such questions. The ruling of the court being upon a subject-matter entirely foreign to the issues, the appellant is not in position to complain thereof.

The judgment is affirmed, with costs.

BARTCH, C. J., concurs in the judgment. STRAUP, J., concurs.